UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF FLORIDA
CASE NO. 23-CV-21505-PAS

U.S. ALLIANCE MANAGEMENT CORP.
d/b/a U.S. SECURITY,
   Plaintiff,

v.

AIRBUS AMERICAS CUSTOMER SERVICES, INC.
f/k/a AIRBUS SERVICE COMPANY, INC.,
a foreign profit corporation,
   Defendant.
_____/

## OMNIBUS ORDER DENYING DEFENDANT'S MOTION FOR SUMMARY JUDGMENT AND GRANTING PLAINTIFF'S MOTION FOR SUMMARY JUDGMENT

THIS MATTER is before the Court on Cross-Motions for Summary Judgment filed by Defendant Airbus ("Defendant") [DE 21] and Plaintiff US Security ("Plaintiff") [DE 30], seeking a legal interpretation of the parties' 2007 Agreement, under which Plaintiff provided unarmed security guards for Defendant's business. There are no disputed facts on the liability issue. The sole legal issue is whether the express language provides for automatic renewals of five-year terms, unless a 90-day notice of termination or modification is given.

Both parties seek summary judgment, construing the Agreement's language as clear and unambiguous in their own favor.  Based on the Agreement's language that absent a termination notice, it "will automatically renew for the same term ...", Plaintiff asserts the Agreement renewed for a new five-year term on February 1, 2017, thus Defendant's failure to continue breached the Agreement.  DE 30 at 3, 21.

1

Defendant argues that the Agreement's terms allow for only one renewal, which occurred, and thus there was no agreement in existence that could have been breached after January 30, 2017.  DE 21 at 6.

The Court has considered the parties' Cross-Motions for Summary Judgment, Defendant's Reply in support of its Motion [DE 32], the Statements of Material Facts [DE 22; DE 31; DE 33], the record, and the oral argument.  The Agreement's clear and unambiguous language dictates that because Defendant did not provide a 90-day notice, the Agreement renewed for a second time.  Therefore, Defendant's Motion for Summary Judgment must be denied, and Plaintiff's Motion for Summary Judgment must be granted.

## I.   BACKGROUND

### a.  Procedural background

On March 28, 2023, Plaintiff filed, in state court, its Complaint [DE 1-2] against Defendant alleging breach of the Agreement.  On April 21, 2023, Defendant removed the case to this Court pursuant to diversity jurisdiction.[1]  DE 1 at 2.

### b.  The Agreement's relevant terms and first renewal

On April 16, 2007, Plaintiff and Defendant entered into the Agreement whereby Plaintiff would be the exclusive provider to Defendant of security services

---

[1] Before this case, Plaintiff asserted a nearly identical claim against Defendant on September 16, 2019 in the Eleventh Judicial Circuit, which Defendant removed to federal court on October 2, 2019.  *U.S. All. Mgmt. Corp. v. Airbus Americas Customer Services, Inc.*, No. 19-CV-24066, ECF No. 1 (S.D. Fla. Oct. 2, 2019).  In January 2023, Chief Judge Altonaga administratively closed the case and required a joint stipulation of dismissal within 60 days.  *Id.*, ECF No. 60.  In March 2023, that court *sua sponte* dismissed the case without prejudice for the parties' failure to file a stipulation of dismissal or request additional time.  *Id.*, ECF No. 62.  As part of the prior litigation, the parties mediated in October 2022, albeit unsuccessfully.  *Id.*, ECF No. 58.

for the Agreement's term which was five years. DE 30-2 at 1, 3. The Agreement had an effective date of January 30, 2007. *Id.* at 1. The Agreement's first numbered paragraph stated that during the term of the Agreement, Plaintiff would weekly invoice Defendant to pay Plaintiff $21.69 per hour for a minimum of 208 hours per week. *Id.* ¶ 1. This rate would remain in force through the duration of the term. *Id.* In the absence of a notice of termination or modification, the automatically renewing service rate was to increase by six percent during the first year and by five percent each subsequent year to offset the increase in the cost of living. *Id.* The Agreement's provision on automatic renewal in the absence of a notice of termination or modification stated:

> Ninety days prior to the expiration of this agreement written notice may be provided to either party by first class certified U.S. Mail of the desire to extend the Agreement, conclude the agreement, or commence negotiations on Agreement changes. In the absence of such notice or any consensus as to modifications, the Agreement will automatically renew for the same term as indicated above.

*Id.* The Agreement's commencement and cancellation paragraph provided:

> The services to be furnished by U.S. SECURITY hereunder shall commence on the 30 DAY of January 2007 and shall continue for the identical term as indicated on the above. This Agreement may only be canceled for the following reason: The failure of U.S. Security to permanently replace a service guard from his/her post after 5 day written notice is sent by Airbus Service Company, Inc. and/or its agents(s) ... Should the contract be canceled other than this specific cause, than (sic) U.S. Security shall be entitled to liquidation damages equal to its determined loss of profit it would have realized as if it would have fully performed the balance of the contract.

*Id.* ¶ 2.

On January 30, 2012, the Agreement automatically renewed for another five-year term, because neither party provided a 90-day notice by November 1,

3

2011. DE 31 ¶ 16; DE 33 ¶ 16. The renewed term was January 30, 2012 through January 30, 2017.

### c. The parties' relationship after the Agreement's renewal

Neither party gave a termination or modification notice on or before November 1, 2016, which was 90 days prior to the end of the first renewal term. However, seven days before the expiration date, on January 23, 2017, Defendant sent Plaintiff a letter stating in part:

> Because the Agreement does not provide for an automatic extension of the Agreement past the January 30, 2017 expiration date, we agree to extend the Agreement for an additional ninety (90) days under the current Agreement terms to allow Airbus and U.S. Security to discuss the potential for a new service agreement.

DE 22-1 at 10; DE 31-4. On January 31, 2017, Plaintiff responded, "While we thank you for your letter, and look forward to a continued working relationship with you, please note that the letter you sent is unnecessary as our contract with Airbus has renewed, per its terms." DE 22 ¶ 8; DE 31 at 6 ¶ 8.

After January 2017, Defendant continued paying for Plaintiff's services consistent with the parties' Agreement making thirty-seven payments over the next fourteen months. DE 31 ¶ 24; DE 33 ¶ 24. On March 20, 2017, Defendant's counsel sent Plaintiff's counsel a letter reiterating Defendant's position that the Agreement expired on January 30, 2017 and that Plaintiff was providing services to Defendant without a contract. DE 22-1 at 23; DE 31 at 6 ¶ 10. Defendant's counsel added that there must be a written contract in place until the parties determine how to proceed. *Id.* On March 27, 2018, Defendant's counsel wrote to his counterpart,

4

explaining Defendant's decision to terminate Plaintiff's services. DE 22-1 at 25–26; DE 31-6.

## II.   LEGAL STANDARD

Summary judgment is appropriate "if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). The substantive law will determine which facts are material, and only disputes over facts that might affect the outcome of the suit under the governing law will preclude summary judgment. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986). A dispute is genuine "if the evidence is such that a reasonable jury could return a verdict for the nonmoving party." *Id.*

The movant is responsible for identifying those portions of the record which it believes demonstrate the absence of a genuine issue of material fact. *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986). Once the movant satisfies this burden, the burden of production shifts to the non-movant, which must offer specific facts showing that there is a genuine issue for trial. *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 587 (1986). Courts must view the movant's evidence and all factual inferences arising from it in the light most favorable to the non-movant. *Adickes v. S.H. Kress & Co.*, 398 U.S. 144, 157 (1970). However, "[a] mere 'scintilla' of evidence supporting the [non-movant's] position will not suffice; there must be enough of a showing that the jury could reasonably find for that party." *Walker v. Darby*, 911 F.2d 1573, 1577 (11th Cir. 1990) (quoting *Anderson*, 477 U.S. at 252). Because the parties agree the material facts are not in dispute

5

and the sole liability issue turns on a question of law, summary judgment is appropriate on liability.

### III.  DISCUSSION

The automatic renewal clause in the Agreement is clear and unambiguous. Therefore, because Defendant did not provide a 90-day notice on or before November 1, 2016, the Agreement renewed for a second time on February 1, 2017.[2]

The purpose of an automatic renewal clause, also known as an "evergreen"[3] clause, is to give the contracting parties the security of knowing that after a certain date the contract will be renewed automatically under the original terms. *Whispering Pines of Royal Palm Beach Homeowners Ass'n, Inc. v. Comcast Cable Commun., LLC*, 2014 WL 2807641, at *3 (S.D. Fla. June 20, 2014) (citation omitted) (applying Florida law).  The automatic renewal clause in this case reads:

> Ninety days prior to the expiration of this agreement written notice may be provided to either party by first class certified U.S. Mail of the desire to extend the Agreement, conclude the agreement, or commence negotiations on Agreement changes. In the absence of such notice or any consensus as to modifications, the Agreement *will automatically renew for the same term* as indicated above.

DE 30-2 ¶ 1 (emphasis added).

Whether contract terms are ambiguous depends on whether the terms are *reasonably* susceptible to more than one interpretation. *Lambert v. Berkley S.*

---

[2] Even if the Agreement's terms were ambiguous, Defendant's additional payments to Plaintiff for the same services over the fourteen months following January 2017 support the parties' intent that the Agreement could be renewed.  *See Mayflower Corp. v. Davis*, 655 So. 2d 1134, 1137 (Fla. 1st DCA 1994) ("Where a contract is ambiguous or its meaning is doubtful, the circumstances surrounding the parties may be considered in ascertaining the parties' intentions.").

[3] A contract with an evergreen clause is sometimes referred to as an "evergreen contract," which Black's Law Dictionary defines as "[a] contract that renews itself from one term to the next in the absence of contrary notice by one of the parties."  *Contract*, Black's Law Dictionary (11th ed. 2019).

6

*Condo. Ass'n, Inc.*, 680 So. 2d 588, 590 (Fla. 4th DCA 1996) (emphasis added).  A true ambiguity does not exist merely because a document can possibly be interpreted in more than one manner.  *Id.*

Here, Plaintiff met its burden under Florida law to show that the Agreement's language is clear and unambiguous.  The Agreement's terms, including the automatic renewal clause, are reasonably susceptible to only one interpretation: that the Agreement renewed for a second time.

Contractual interpretation is "decided by reading the words of a contract in the context of the *entire* contract and construing the contract to effectuate the parties' intent."  *Feaz v. Wells Fargo Bank, N.A.*, 745 F.3d 1098, 1104 (11th Cir. 2014) (emphasis added) (citation omitted).  The provisions tying the service rate to cost of living increases were negotiated with successive renewal terms in mind.  The Agreement's first paragraph references "[a] service rate increase of Six (6) percent for the first year and Five (5) percent for each subsequent year to offset the cost of living."  DE 30-2 ¶ 1.  The eighth paragraph states in part, "if the State or Federal Minimum Wage increases during the term of this Agreement, the client agrees that the hourly rate per security officer specified in this Agreement shall be increased by an amount equal to the minimum wage increase."  *Id.* ¶ 8.  The Agreement, taken together, shows a plan that renewals would continue beyond one renewal unless a timely notice of termination or modification is provided.

Defendant cites *PDF Foods* for its argument that the Agreement did not renew for a second time because the Agreement uses "term" in the singular.  DE 21

7

at 8–9. That case concerned the application of New York law to a non-exclusive distributorship agreement of perishable goods. *PDF Foods, LLC v. Naked Juice Co. of Glendora, Inc.*, 2008 WL 11331990, at *1–3 (S.D. Fla. Apr. 29, 2008) (Middlebrooks, J.). The relevant clause there was distinguishable: "Thereafter, it shall automatically renew for an *additional* one (1) year term unless written notice of termination is given by one of the parties to the other at least sixty (60) days prior to the end of the *initial* term." *PDF Foods, LLC v. Naked Juice Co. of Glendora, Inc.*, Case No. 07-CV-81217, ECF No. 1 at 11 (emphasis added). Notably, the Agreement in this case lacks this very clear provision. The *PDF Foods* court expressed two grounds to dismiss the breach count—the agreement was non-exclusive and had expired after one renewal term based on the contract language. *Id.* at *3. The second ground was not the thrust of the parties' argument but the result of the court looking at the totality of that agreement. *Id.* Therefore, because the *PDF Foods* automatic renewal clause is distinguishable and that court's focus was on other provisions, Defendant's reliance on *PDF Foods* is misplaced.

Thus, as a matter of law, the contract automatically renewed for the second five-year term when Defendant failed to provide the specified termination/modification notice 90 days before January 30, 2017. Because the undisputed record evidence shows that in March 2018, Defendant unilaterally terminated the Agreement, Plaintiff has established the first two elements under Florida law for a breach of contract action, namely (1) the existence of a contract; and (2) a material breach of that contract. *People's Tr. Ins. Co. v. Valentin*, 305 So.

3d 324, 326 (Fla. 3d DCA 2020). The sole remaining issue is the damages for the breach, regarding which the Agreement's cancellation provision states:

> Should the contract be canceled other than this specific cause, than (sic) U.S. Security shall be entitled to liquidation damages equal to its determined loss of profit it would have realized as if it would have fully performed the balance of the contract.

DE 30-2 ¶ 2.

### IV. CONCLUSION

Accordingly, it is

ORDERED that:

1. Defendant's Motion for Summary Judgment [DE 21] is DENIED;

2. Plaintiff's Motion for Summary Judgment [DE 30] is GRANTED.

DONE AND ORDERED in Miami, Florida, this 19th day of November, 2023.

_____
PATRICIA A. SEITZ
UNITED STATES SENIOR DISTRICT JUDGE

cc:   The Honorable Lisette M. Reid
      Counsel of Record